IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NATHANIEL ARTHUR DOSS            § | | |
|    TDCJ-CID #1106809                § | | |
| § | | |
| VS.                                                            § | | C.A. NO. C-07-194 |
| § | | |
| NATHANIEL QUARTERMAN, ET AL. § | | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION

This case is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's claim against Nathaniel Quarterman be dismissed with prejudice for failure to state a claim. It is

respectfully recommended further that plaintiff's Eighth Amendment claims of failure to protect be retained as set forth herein.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Allred Unit in Iowa Park, Texas. On April 5, 2007, plaintiff filed his original complaint in the United States District Court for the Southern District of Texas, Houston Division, against TDCJ Director, Nathaniel Quarterman, the Gang Intelligence Office, and the wardens of the Robertson Unit, McConnell Unit, and Telford Unit, alleging failure to protect. (D.E. 1). On April 16, 2007, Judge Craven severed and transferred plaintiff's claims "that concern matters that occurred at the McConnell Unit" to this Court. (D.E. 7).

A Spears[1] hearing was conducted on June 28, 2007. The following allegations were made in plaintiff's original complaint or at the hearing:

Plaintiff is a former member of the Bloods gang. In March 2005, while on the Robertson Unit, plaintiff broke away from the gang. He was quickly labeled a "snitch,"

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

however, and was assaulted and received a grazed stab-wound in the neck. Despite the attack, Gang Intelligence and the Unit Classification Committee ("UCC") at the Robertson Unit refused to assign him to protective custody. Plaintiff finally succeeded in having Huntsville approve a transfer to the McConnell Unit.

When he arrived at the McConnell Unit on May 6, 2005, plaintiff appeared before the UCC and orally requested that he be placed in protective custody due to his conflict with members of the Bloods. The UCC, composed of Assistant Warden Castillo, John Doe 1, and John Doe 2, denied his request for protective custody due to lack of evidence, and he was placed in general population. The next day, plaintiff filed a life in danger ("LID") claim. He was removed from general population and placed in transit status pending the LID investigation. Approximately two weeks later, he appeared before a UCC, again composed of Assistant Warden Castillo, John Doe 1 and John Doe 2. Again, his request for protective custody was denied for lack of sufficient evidence.

Plaintiff was returned to general population. He was assigned a cell-mate who was a member of the Crips gang, known rivals of the Bloods, and plaintiff paid his new cell-mate to protect him.[2] Things were quiet for awhile until a riot broke out between the Crips and the Bloods. Thereafter, plaintiff was placed in close custody in a single-man cell. He was housed on the side with the Bloods; however, the gang members did not know him or have the opportunity to see him.

---

[2] Ironically, in the 1990's, plaintiff had failed a LID claim against this Crip member who he was now paying to protect him.

3

On December 13, 2005, plaintiff left his cell to get a haircut and saw offender Michael Justice, an inmate who had been involved in the assault on plaintiff at the Robertson Unit. According to plaintiff, a member of the State Classification Committee in Huntsville, Texas, made the decision to send offender Justice to the McConnell Unit, despite the fact that he and plaintiff are never to be housed together. Plaintiff told the duty sergeant, John Doe 3, that he was not to be in the same prison as offender Justice. Sergeant Doe 3 told plaintiff to go back to his cell and that he would take care of things. Before plaintiff could even made it back to his cell, offender Justice had already ordered Blood gang members to attack him. Plaintiff was assaulted by Blood gang members, beating him about his face, back and shoulder. Following the assault, he was bleeding and bruised, and he still has problems with his shoulder.

Plaintiff is seeking one million dollars in damages.

### III.  DISCUSSION

**A.     Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the

prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. Id.

**B.     Claims against Nathaniel Quarterman.**

Nathaniel Quarterman is the Director of the TDCJ-CID. Plaintiff testified that he named him as a defendant because, as director, he is responsible for those he supervises. Plaintiff admitted that Mr. Quarterman had no personal involvement in any decision related to plaintiff's claims for protective custody.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.), cert. denied, 464 U.S. 897 (1983). Moreover, it is well settled that a plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978)). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

Plaintiff fails to allege, let alone establish, that Director Quarterman was personally involved in any decision concerning his requests for protective custody or that Quarterman

5

implemented any unconstitutional policy concerning the manner in which inmates' requests for protective custody are reviewed. Moreover, the Fifth Circuit noted in a failure to protect case that:

> . . . given the size of the operation that they oversee, [supervisory officials] cannot be expected to intervene personally in response to every inmate letter they receive. The record in this case shows that they responded to [the plaintiff's] complaints by referring the matter for further investigation or taking similar administrative steps. This was a reasonable discharge of their duty to protect the inmates in their care.

Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004).

Thus, within the TDCJ, it is reasonable for the Director to delegate such responsibilities to the individual State and Unit classification committees. Thus, it is respectfully recommended that plaintiff's claims against Director Quarterman be dismissed with prejudice for failure to state a claim.

**C.   Assistant Warden Castillo, and UCC Members John Doe 1 and John Doe 2**.

Plaintiff claims that Assistant Warden Castillo, John Doe 1, and John Doe 2, who all served on the UCC the day he arrived on the McConnell Unit from the Robertson Unit, were deliberately indifferent to his health and safety when they denied his oral request for protective custody, and, two weeks later, denied his LID.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer,

6

511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

Plaintiff's allegations against Warden Castillo, Jon Doe 1 and John Doe 2 are sufficient to state a claim for failure to protect. Plaintiff offered evidence that he had renounced his affiliation with the Bloods, and, as a consequence, had already been assaulted and transferred off one unit. Plaintiff establishes, at a minimum, that defendants knew he was at an increased risk of danger as a former gang member who had previously been assaulted on at least one occasion. His allegations are sufficient for § 1915A screening.

**D.     Sergeant John Doe 3.**

Plaintiff claims that Sergeant John Doe 3, the officer working close custody on December 13, 2005, was deliberately indifferent to his health and safety. Plaintiff claims that, after he observed offender Justice at the McConnell Unit, he advised Sergeant Doe 3 that he and Justice should not be in the same prison together. However Sergeant Doe 3 simply dismissed plaintiff's concerns and instructed him to return to his cell without an escort. Plaintiff was assaulted by a gang of Bloods that he believes offender Justice had orchestrated to attack him.

Plaintiff has stated sufficient details to survive § 1915A screening. He has demonstrated that he advised defendant Doe 3 an increased risk to his health and safety, yet defendant ignored that risk, resulting in harm to plaintiff. It is recommended that plaintiff's claim against Sergeant John Doe 3 be retained.

**E.     State Board Classification member.**

Plaintiff claims that John or Jane Doe 4, a State Board Classification Member, was deliberately indifferent to his health and safety when he or she authorized the transfer of offender Michael Justice to the McConnell Unit. Plaintiff maintains that this individual would have had access to all of the offender classifications files and would have known that he and offender Justice were not to be housed on the same unit together. He points out that, within minutes of offender Justice seeing him on the McConnell Unit, he was assaulted by Blood members organized at Justice's instruction. It is respectfully recommended that plaintiff's claims against the State Classification John of Jane Doe 4 be retained, and service ordered on this defendant.

**F.     McConnell Unit Gang Intelligence Officers.**

In his final claim, plaintiff argues that McConnell Unit gang intelligence officers were deliberately indifferent to his health and safety because they failed to investigate properly his LID claim or to advise properly the UCC concerning his claim for protective custody. According to plaintiff, once an LID claim is filed, gang intelligence officers conduct an investigation, interview witnesses, gather information, and make a recommendation to the UCC on the inmate's LID claim. In plaintiff's case, the gang intelligence officers investigating plaintiff's LID claim must have concluded that it be denied, despite his assault on the Robertson Unit. Thus, plaintiff has established at a minimum that these John or Jane Doe gang intelligence officers had knowledge that he was at an increased risk of harm, yet dismissed that risk. Further inquiry is warranted.

## IV. **RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that the Court dismiss with prejudice for failure to state a claim plaintiff's claim against Nathaniel Quarterman.  28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  It is further respectfully recommended that the court retain plaintiff's Eighth Amendment claims for failure to protect against the following defendants: Assistant Warden Castillo; McConnell UCC Member John Doe 1; McConnell UCC Member John Doe 2; Sergeant John Doe 3; State Board Classification Member John or Jane Doe 4; McConnell Unit Gang Intelligence Officers John or Jane Doe 5 and 6.

Respectfully submitted this 26th day of July, 2007.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).